2009 ME 73

**Betsy A. WANDISHIN**

v.

**Edward M. WANDISHIN Jr.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 30, 2009.

Decided: July 21, 2009.

---

Robert A. Laskoff, Esq., Courtney Michalec, Esq., Laskoff & Associates, Lewiston, ME, for Edward M. Wandishin Jr.

Elliott L. Epstein, Esq., Pickus & Epstein, LLC, Portland, ME, for Betsy Wandishin.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

ALEXANDER, J.

[¶ 1] Edward M. Wandishin Jr. appeals, and Betsy A. Wandishin cross-appeals, from the judgment of the District Court (Lewiston, *McElwee, J.*), in the parties' action for divorce. Between them, the appeal and the cross-appeal challenge most of the decisions reached by the court on the financial issues in the divorce, including: (1) identification, valuation, and division of marital property; (2) determination of the parties' incomes and earning capacities; (3) the award of and limitations on the spousal support awarded to Betsy; and (4) the award of attorney fees to Betsy. After review of the substantial record developed in the District Court, we affirm.

## I. CASE HISTORY

[¶ 2] This divorce action was filed in 2005 and, after a period of discovery and pretrial motions, came on for hearing in 2007. The parties were able to resolve the nonfinancial parental rights issues regarding their minor children. However, virtually all financial issues in the divorce were contested, resulting in the trial court being presented with a significant volume of conflicting evidence regarding: (1) identification of some items of personal property as marital or nonmarital property; (2) valuation of the marital home; (3) responsibility for expenditure of certain funds from marital accounts after the filing of the divorce; (4) income and earning capacity of each party; and (5) the need for and entitlement to an award of spousal support and/or attorney fees.

[¶ 3] Recognizing the differing viewpoints and diverse issues and claims raised by the parties, at the conclusion of its hearing, the court invited each party to submit proposed findings of fact to it, prior to the preparation of its decision. Each party did so.

[¶ 4] After reviewing the proposed findings of fact and the record, the court issued a memorandum of decision. This memorandum of decision recognized and commended the parties' agreement on the parental rights issues and then proceeded to comprehensively address the contested financial issues. At the start of its decision, the court stated:

> The parties are commended for reaching agreement on the non-financial parental rights issues in the best interests of their children, the provisions of which shall be incorporated into a final divorce judgment as directed below. Unfortunately, this litigation was protracted in substantial part by the focus of the parties and/or counsel on the minutia of the post-separation actions of the parties (financial or otherwise), rather than what appears to have been a very good and productive marriage for more than 14 years, during which the parties had and were raising three wonderful children.

[¶ 5] By this statement the court appeared to be attempting to get the parties to focus on the big picture and the best interests of their children and to move on from the bitterness of the divorce. At the conclusion of its decision, after addressing all of the contested issues, the court invited each party, within ten days, to submit any exceptions to its decision identifying issues or assets that may have been omitted in the decision or any errors in computation in the decision.

[¶ 6] Both parties filed exceptions to the decision. The court then issued a supplemental memorandum of decision clarifying its prior order and repeating the direction originally given in its memorandum of decision that Betsy's counsel should prepare a final divorce judgment incorporating both the parental rights issues agreed upon by the parties and the issues resolved by the court in its memorandum of decision and its subsequent clarification order. In September 2007, Betsy's coun-

sel submitted a proposed divorce judgment. Then followed a practice of the court issuing clarification orders in response to exceptions and objections, with the parties filing further objections and exceptions, to which the court responded by denying the exceptions or issuing further clarification orders. This process extended over a period of about six months from the date of the original memorandum of decision. At the conclusion of this process, the court again requested Betsy's counsel to prepare a final divorce judgment incorporating both the parental rights issues agreed upon by the parties and the issues resolved by the court in its memorandum of decision and its subsequent clarification orders.

[¶ 7] The divorce judgment and attendant orders relating to child support were ultimately issued in April 2008. Although the issues addressed in the final divorce judgment had been subject to extensive litigation by the parties and consideration by the court after issuance of the memorandum of decision, Edward responded to the divorce judgment by filing a detailed motion to alter and/or amend the divorce judgment or for a new trial, and, separately, a ninety-item motion for findings of fact and conclusions of law. The motion for findings of fact was couched in language better suited to interrogatories that might be directed to a hostile party, rather than a request for findings of fact directed to a court.

[¶ 8] Most of the interrogatories were styled as demands for the reasoning by which the court reached a particular finding of fact or conclusion of law, rather than requests for specific additional findings related to the judgment. Selected examples include:

3. On what basis did the Court determine that the parties had "three wonderful children" and why was it a factor when all that was at issue at trial was property division and support, given that the parties had reached an agreement on the substantial issues related to the children?

5. What did the Court mean to describe in its comment about the protracted nature of the litigation due to the parties' focus on the "minutia of the post-separation actions of the parties" yet go on to make decisions based on the same post-separation activities of the parties?

11. What factors did the Court rely upon in determining that the children should remain in the marital home, notwithstanding its excessive size and maintenance needs, of which Plaintiff is keenly aware but refuses to address?

16. What, if any, credit does the Court give to the Defendant for his flexible schedule so that he may and does continue to provide transportation for the vast majority of the children's activities, schedules, appointments and sports activities?

22. Describe in detail the testimony and facts upon which the Court based its determination that the Defendant had discretionary spending for himself and a companion in light of trial testimony and evidence that each paid their own expenses or divided them substantially equally.

31. Describe why the Court found it acceptable for the Plaintiff to refuse to list the house for sale at separation and all times thereafter when the market pace of sales was arguably at its peak and the parties could have maximized the return of profit and created an effective financial split?

69. Based on all of the evidence of the parties' assets—consisting of retirement and real estate—how the Court could restrict the Defendant's access to his only liquid asset for five years in addition to the nearly three that have lapsed since filing of the divorce? Upon which facts did it rely upon in so Ordering?

84. Please acknowledge what portion of child support is determined to be for housing, transportation, utilities, etc.

[¶ 9] It was within the court's discretion to summarily deny such inappropriate demands to explain the rationale for its opinion—the motion having even demanded an explanation for the court's observation that the parties had "three wonderful children." The court instead issued a restrained order clarifying a few points in the divorce judgment and then generally denying the request for findings. Edward responded with a second motion for further findings of fact and conclusions of law, leading the court to clarify a few additional points in its decision and to deny the remaining request. This order also directed that: "For reasons of judicial economy, defendant is hereby prohibited from filing further motions for findings of fact or conclusions of law."

[¶ 10] Edward then brought this appeal, and Betsy filed her cross-appeal.

## II. LEGAL ANALYSIS

[¶ 11] The court's memorandum of decision, its subsequent clarifications, and the divorce judgment comprehensively addressed all of the financial issues raised by the parties.

### A. Marital Property

[¶ 12] Review of the record discloses evidence that, although contested, supports the court's classification of property as marital or nonmarital, *see Ahern v. Ahern*, 2008 ME 1, ¶ 5, 938 A.2d 35, 37 (a court's determination of whether property is marital or nonmarital is reviewed for clear error), and the court's valuation of the marital property, *see Nadeau v. Nadeau*, 2008 ME 147, ¶ 42, 957 A.2d 108, 120 (a court's valuation of marital property is reviewed for clear error).

[¶ 13] The marital home was the principal item of marital property that was subject to contested valuation. Each party testified to a valuation of the marital home that significantly differed from the valuation offered by the other party, and each party objected to the basis for the other party's valuation, and the competence of that evidence. In a divorce case, the parties who are owners of the marital home, or other marital property, may testify and give their opinion as to the value of that property. *See Landry v. Landry*, 1997 ME 173, ¶ 8, 697 A.2d 843, 845–46. As with any other testimony or evidence, the court may then evaluate the credibility of that evidence and reach a conclusion which accepts the valuation offered by one or the other of the witnesses, or a differing valuation based on the court's independent review of the evidence. *See Brown v. Habrle*, 2008 ME 17, ¶ 10, 940 A.2d 1091, 1094; *Rinehart v. Schubel*, 2002 ME 53, ¶ 9, 794 A.2d 73, 76. In this case, the court determined a value for the marital residence that was lower than that testified to by Edward, but higher than that testified to by Betsy. The court's valuation determination is supported by its independent review of the available evidence and is not clear error.

### B. Spousal Support

[¶ 14] We review a trial court's award of spousal support for an abuse of discretion. *Payne v. Payne*, 2008 ME 35, ¶ 6, 942 A.2d 713, 715. The fact-findings

underlying an award of spousal support, including determinations regarding income and earning capacity, are reviewed for clear error. *Id.* A fact-finding is clearly erroneous only if there is no competent evidence in the record to support it. *Id.* Here, the court's fact-findings underlying its spousal support award are supported by the record, and its conclusions regarding whether an award of spousal support is appropriate do not reflect any abuse of discretion.

■ [¶ 15] Betsy argues that the court should have defined the term "cohabitation" in its order. The order indicates that, after a defined period of time, Betsy's cohabitation with another individual may serve as a basis for termination of Edward's spousal support obligation. The term "cohabitation" is taken from the divorce statute itself that states that a spousal support order may place "[a] limit on the payment of support related to cohabitation by the payee." 19–A M.R.S. § 951–A(3)(E) (2008). The term, commonly used in divorce judgments, does not require further definition in a divorce order. Application of the term after entry of the divorce may depend on discrete factual situations that may be difficult to predict and anticipate through a more specific definition. The court did not err in declining to further define the term "cohabitation" as Betsy had requested.

## C. Attorney Fees

■■ [¶ 16] The divorce statute provides that the court may order one party to pay reasonable attorney fees for the other party. 19–A M.R.S. §§ 105(1), 952(3) (2008). We review a trial court's decision to award attorney fees for an abuse of discretion. *Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 66, 956 A.2d 110, 126. In making such an award, the court may consider the parties' relative ability to pay and overall fairness given the totality of the circumstances of the case. *Id.* Here, considering the disparities in the parties' income and earning capacity as found by the court, and the totality of the circumstances of the case, the court did not abuse its discretion in awarding Betsy $7500 in attorney fees to be paid by Edward.

[¶ 17] Accordingly, on the contested financial issues regarding marital property, earning capacity, spousal support, and attorney fees, the court did not err or abuse its discretion in its divorce judgment. In addition to addressing the financial issues, there are two procedural issues in the case that require comment.

## D. Motion for Findings of Fact

■ [¶ 18] The purpose of motions for findings of additional facts pursuant to M.R. Civ. P. 52(b) is to seek specific fact-findings to support conclusions not already addressed by facts found in the court's opinion. Such motions should concisely indicate the conclusions on which additional fact-finding is desired and, in best practice, suggest particular facts to be found that are supported by the record and are relevant to the conclusion at issue.

■ [¶ 19] Once the court has found the facts, it is not required to explain the rationale used to support each finding of fact or conclusion of law. *Payne v. Payne*, 2006 ME 73, ¶ 9, 899 A.2d 793, 795; *Miele v. Miele*, 2003 ME 113, ¶ 11, 832 A.2d 760, 763–64. Requests for additional fact-findings pursuant to M.R. Civ. P. 52(b) should not be used to attempt to require the court to explain its reasoning in reaching a particular result or to reargue points that were contested at trial and have been resolved by the court's decision.

[¶ 20] The motion for findings of fact and conclusions of law filed by Edward after entry of the final divorce judgment in this case, however, did not comply with the

mandates of Rule 52. Rather, the length and tone of the motion was inappropriate and ineffective, and does not represent good litigation practice. The motion was particularly inappropriate in light of the extra efforts the court had undertaken to invite comments by the parties and adjust its original decision in light of those comments.

[¶ 21] Our review of Edward's requests for findings demonstrates that the court committed no error in its handling of these proceedings.

F. Direction to Counsel to Prepare Order

 [¶ 22] Edward also complains that the court erred in directing counsel for Betsy to prepare the divorce judgment at the conclusion of the proceedings. Such a direction to one party to prepare an order after the court has stated its findings and conclusions either orally or in writing is a common and necessary practice in nonjury proceedings because of limitations on judges' time and staff support. At the conclusion of the proceedings, a trial court may direct a party to draft an order for the court based on the court's stated findings and conclusions. *Jarvis v. Jarvis*, 2003 ME 53, ¶ 14 n. 1, 832 A.2d 775, 778–79.

[¶ 23] After the close of the evidence in this case, the District Court requested that the parties submit to it arguments on the merits of the evidence, a list of marital property requested by each party, and what specific findings each party was asking for with regard to the issues before the court. The court explicitly asked that the parties not make their submissions to the court in the form of a proposed judgment.

[¶ 24] The parties' submissions to the court after the close of the evidence that supported the court's deliberations leading to its memorandum of decision were not part of the record forwarded to this Court. However, review of the court's memoran-

dum of decision, and the extensive proceedings subsequent to it, demonstrate that that memorandum of decision was most certainly the result of the court's exercise of independent judicial judgment. Both parties filed objections to the memorandum of decision, and the court made changes and clarifications prior to the preparation and issuance of its final divorce judgment. That judgment represents the independent judicial decision-making of the court after it appropriately directed a party, here Betsy Wandishin, to prepare a draft judgment in accordance with the court's prior direction. There was no error in the judgment preparation practice demonstrated here.

The entry is:

Judgment affirmed.