2012 ME 54

**Edward KEZER**

v.

**CENTRAL MAINE MEDICAL CENTER.**

Supreme Judicial Court of Maine.

Argued: Jan. 11, 2012.

Decided: April 5, 2012.

Arthur J. Greif, Esq. (orally), and Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for appellant Edward A. Kezer.

Michael R. Poulin, Esq. (orally), Skelton, Taintor & Abbott, Auburn, on the briefs, for appellee Central Maine Medical Center.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1] Edward Kezer appeals from the judgment entered in the Superior Court (Penobscot County, *Murphy, J.*) following a jury trial at which the jury found that Central Maine Medical Center (CMMC) had taken adverse employment action against Kezer in violation of the Maine Human Rights Act (MHRA), but had not failed to provide him with reasonable accommodations for his hearing impairment or his shoulder injury. Kezer argues that (1) the court erred in instructing the jury on the statute of limitations; (2) the court should have instructed the jury that the MHRA requires an employer to engage in a good faith consultation with a disabled employee to identify reasonable accommodations for the employee's disability; and (3) the court abused its discretion by awarding attorney fees less than the amount Kezer requested. We affirm the judgment.

## I. BACKGROUND

### A. Factual Background

[¶ 2] We view the evidence admitted at trial in the light most favorable to the jury's verdict. *Jacob v. Kippax*, 2011 ME 1, ¶ 2, 10 A.3d 1159.

[¶ 3] CMMC hired Edward Kezer in 2004 to work as a nurse at the single-stay unit (SSU) caring for cardiovascular surgery patients. CMMC was aware that Kezer has functional hearing loss: he was born with no hearing in his left ear and has trouble hearing certain sounds in his right ear. As a nurse at the SSU, Kezer was required to respond to various patient alarms.

[¶ 4] Around January 2005, some of Kezer's coworkers expressed concerns to Anne Fereday, CMMC's director of cardio-vascular services, that Kezer was having trouble responding to his patients' alarms. Fereday met with Kezer in mid-January 2005 to discuss the issue. Kezer assured her that he did not have trouble hearing his alarms. During a second meeting in early February 2005 with Fereday and other CMMC employees, Kezer stated that his hearing was a "non-issue" and he was able to respond to his own alarms.

[¶ 5] Later, on August 16, 2005, Kezer injured his left shoulder while working at CMMC. Kezer was placed on work restrictions that limited him, among other things, to lifting and carrying no more than thirty pounds. On September 26, 2005, Kezer's shoulder injury was reevaluated and his doctor recommended that Kezer not push, pull, or lift more than ten pounds. Kezer's coworkers were made aware of his work restrictions and told him to let them know if he needed assistance lifting or moving patients.

[¶ 6] On October 24, 2005, after CMMC suggested that Kezer alter his work schedule to avoid reinjuring his shoulder, Kezer sent the employee health department a letter stating that his physician had cleared him to "return to regular duty" and that his "left shoulder ha[d] healed." Attached to the letter was a form that his doctor had signed that stated Kezer "may work to tolerance." As a result, Kezer's schedule remained unaltered.

[¶ 7] A few months later, in early January 2006, SSU manager Lori Whitaker drafted a performance improvement plan for Kezer after receiving negative reports about Kezer's job performance. The plan addressed numerous alleged deficiencies in Kezer's job performance and recommended corrective actions CMMC could take, including termination of Kezer's employment. Kezer met with Whitaker around January 9, 2006, to discuss the plan; he disagreed that there was any

deficiency in his job performance. Shortly thereafter, Whitaker called Kezer and offered him a position working as a research assistant for a Dr. Burgess at CMMC. Less than twenty-four hours later, however, the offer was withdrawn without explanation. On January 10, 2006, Kezer left CMMC on medical leave due to pain in his left shoulder and work related stress.

[¶ 8] Kezer filed a discrimination complaint against CMMC with the Maine Human Rights Commission around February 7, 2006. CMMC received notice of the complaint on February 14, 2006. Two days later, Kezer's healthcare providers cleared him to return to work. On that same day, February 16, 2006, Kezer had a phone conversation with Clark Phinney, CMMC's employee health manager, in which Phinney told Kezer there were no available positions for him that could accommodate his work restrictions related to his left shoulder.[1] However, near the end of February 2006, Kezer returned to work at CMMC in a quality assurance position. Kezer learned from an employee in the quality assurance department that the position had been open for at least two years.

[¶ 9] On March 7, 2006, Kezer had surgery on his left shoulder. Kezer did not return to work at CMMC after his surgery, and on March 30, 2006, he resigned from CMMC.

B. Superior Court Proceedings

[¶ 10] Kezer filed a complaint against CMMC in the Superior Court on October 30, 2007, alleging employment discrimination based on numerous factual allegations. At trial, Kezer maintained that CMMC failed to accommodate his shoulder injury and his hearing impairment. He testified that his coworkers intentionally refused to provide him with support in responding to his alarms when he was unable to hear them or when he was busy with other patients. He also alleged that despite his physical limitations due to his shoulder injury, he was not given light-duty assignments and was assigned to heavy, debilitated patients, rather than to patients who required less physical care.

[¶ 11] Kezer testified that on numerous occasions he requested that he be provided with assistance in responding to his alarms and be given light-duty assignments. Specifically, he maintained that in the seventy days prior to leaving CMMC on medical leave on January 10, 2006, he made repeated requests for accommodations, none of which were granted.

[¶ 12] Later, Kezer argued that the jury should be instructed that each denial of a renewed request for a reasonable accommodation triggered a new statute of limitations period, consistent with his interpretation of *Tobin v. Liberty Mutual Insurance Co.*, 553 F.3d 121 (1st Cir.2009). The court disagreed and instead structured the statute of limitations instruction on our decision in *LePage v. Bath Iron Works Corp.*, 2006 ME 130, 909 A.2d 629. As a result, the jury received the following instruction on the statute of limitations issue:

> Under Maine law a lawsuit must be brought no later than two years after the event of discrimination that is complained of. The defendant has the burden of proof in asserting a statute of limitations defense. The Court is asking you to consider the statute of limitations as an affirmative defense in this case because there are issues of fact concerning whether the defendant's alleged failures to accommodate both Mr. Kezer's shoulder and hearing conditions occurred within the applicable statutory period. In this case the lawsuit was

1. Kezer's doctor had reexamined him on January 31, 2006, and had recommended that Kezer not lift, push, or pull anything over ten to fifteen pounds.

filed on October 31, 2007,[2] and therefore, you must determine whether the alleged discriminatory events occurred before October 31, 2005. Under Maine law the plaintiff cannot recover for discriminatory events that occurred before that date.

In Maine and for purposes of this case an event occurs when an employee ... receives unambiguous and authoritative notice that the employer will not provide the requested accommodations. [CMMC] must prove by a preponderance of the evidence that Mr. Kezer had unambiguous and authoritative notice before October 31, 2005, that his requested accommodations for his hearing disability or his shoulder condition would not be provided. You must consider the statute of limitations issues claims as to the hearing conditions separately from this issue as it pertains to the shoulder condition. If you find that CMMC proved by a preponderance of the evidence that Mr. Kezer was provided such a notice for either or [both] of his failure to accommodate claims, one or both of the claims are barred [by the] statute of limitations.

[¶ 13] Kezer also requested that the jury be instructed that, pursuant to the MHRA, an employer must engage in an interactive process with a disabled employee in a good faith effort to identify and make reasonable accommodations for the employee's disability. The court declined to do so, reasoning that the interactive process requirement was based on federal law rather than the MHRA.

[¶ 14] Ultimately, three questions concerning CMMC's liability were submitted to the jury on the jury verdict form. On the first question, the jury found that CMMC had taken adverse employment action against Kezer in violation of the MHRA by either denying him the research position with Dr. Burgess in January 2006 or by refusing to return him to work in February 2006. The jury awarded Kezer $5000 in compensatory damages as a result of this finding. On question two, all nine jurors found that CMMC had not failed to accommodate Kezer's hearing disability. On question three, the jury found six to three that CMMC had not failed to accommodate Kezer's shoulder injury. Kezer did not object to the structure of questions two and three as presented to the jury and did not request or propose a verdict form that would have clarified whether CMMC prevailed on its statute of limitations defense or whether Kezer failed to sustain his burden of proof on his reasonable accommodation claims.

[¶ 15] Later, after a hearing on back pay and attorney fees, the court awarded Kezer $45,000 in attorney fees and $4399.77 in expenses. Although Kezer had requested $119,702.77 in attorney fees and expenses, the court concluded that in light of Kezer's limited degree of success in relation to the claims that he presented at trial, a significant discount was required. The court explained:

> Since summary judgment was issued, this has been a case about allegations that CMMC failed to accommodate two distinct conditions, one having to do with Plaintiff's hearing condition, and the other based upon a shoulder condition that eventually required surgery. While Plaintiff's counsel now minimizes the hearing claim, and the time expended on it throughout the proceedings, it is clear to the Court that the thrust of the Plaintiff's testimony, as well as Plaintiff's opening statement and closing argument, [was] that CMMC discriminated against the Plaintiff based on his hearing problems. Certainly, his arguments

---

**2.** The record reflects that the complaint was filed on October 30, 2007. Neither party raises any issue on appeal regarding the date given in the court's instructions.

based on his hearing condition constituted at least half of the case. What the jury found, however, is that CMMC violated the MHRA by failing to reassign the Plaintiff to a vacant position or positions that he could perform within his physical limitations. The condition at issue during the time frames for which a violation or violations were found was his shoulder condition. In addition, the Court would note that the modest compensatory damages awarded reflected the jury's belief that the Plaintiff's injuries due to discrimination were relatively minor.

The court then entered judgment on March 14, 2011.

## II. DISCUSSION

### A. Statute of Limitations

[¶ 16] Kezer argues that the court erred by instructing the jury that the statute of limitations barred his failure to accommodate claims if CMMC established that it provided him with unambiguous and authoritative notice that his requests for accommodations would not be granted more than two years before the filing of his complaint. "We review jury instructions in their entirety to determine whether they fairly and correctly apprised the jury in all necessary respects of the governing law." *WahlcoMetroflex, Inc. v. Baldwin*, 2010 ME 26, ¶ 14, 991 A.2d 44 (quotation marks omitted).

[¶ 17] We determined in *LePage* that the statute of limitations period begins to run for purposes of the MHRA when an employee receives unambiguous and authoritative notice of an employer's alleged discriminatory decision. *See* 2006 ME 130, ¶ 16, 909 A.2d 629; *see also Del. State Coll. v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) ("[L]imitations periods normally commence when the employer's decision is made."). We explained that "a discriminatory act must have a

degree of permanence, sufficient to put a reasonable claimant on notice of discrimination in order to begin the [statute of] limitations period." *LePage*, 2006 ME 130, ¶ 11, 909 A.2d 629. We concluded that the proper standard for making such a determination is "whether the employee has received unambiguous and authoritative notice of the discriminatory act." *Id.* ¶ 15 (alteration and quotation marks omitted). As a result, we found that the plaintiff's employment discrimination claims were time-barred because the plaintiff had received "unambiguous and authoritative notice of the alleged discriminatory decision" more than two years before the filing of his complaint. *Id.* ¶ 16 (quotation marks omitted).

[¶ 18] It is well established that an employer's denial of a disabled employee's request for a reasonable accommodation is a discrete act of alleged discrimination from which the applicable statute of limitations period begins to run, similar to "a termination, a refusal to transfer, or a failure to promote." *Tobin*, 553 F.3d at 130. Therefore, the statute of limitations period begins to run for purposes of the MHRA when a disabled employee receives unambiguous and authoritative notice of the employer's alleged discriminatory decision to deny the employee's request for a reasonable accommodation. *See LePage*, 2006 ME 130, ¶ 16, 909 A.2d 629.

[¶ 19] Kezer contends that the statute of limitations does not bar his claims in this case even if he received unambiguous and authoritative notice that CMMC had denied his initial requests for accommodations more than two years before the filing of his complaint because each subsequent denial of a renewed request for a reasonable accommodation is a discrete act of alleged discrimination that triggers a new statute of limitations period. Kezer's argument, however, fails to account for our

determination in *LePage* that the proper focus for purposes of the statute of limitations is whether the employee has received unambiguous and authoritative notice of the employer's alleged discriminatory *decision.* *Id.*

[¶ 20] In *Tobin,* the court reasoned that although an employee could not rely on the continuing effects of an employer's denial of a request for a reasonable accommodation to extend the limitations period, a subsequent denial of a renewed request for a reasonable accommodation could be viewed as a new discrete act of alleged discrimination and could therefore serve as the starting point for a new limitations period. *See* 553 F.3d at 131–35. The court noted that "any other approach would fail to take into account the possibility of changes in either the employee's condition or the workplace environment that could warrant a different response from the employer to renewed requests for accommodation." *Id.* at 133.

[¶ 21] Accordingly, where a significant and material change of circumstances occurs involving the employee's disability or the employer's ability to accommodate the disability, and the employee makes a new request for a reasonable accommodation based upon such a change in circumstances, an employer's subsequent denial of that request will be considered a new discrete act of alleged discrimination and will establish a starting point for a new statute of limitations period.

[¶ 22] However, an employer's subsequent denial of an employee's renewed request for an accommodation does not give rise to a new limitations period when such a denial is the result of an employer's unwillingness to reverse a previous allegedly discriminatory decision. *See LePage,* 2006 ME 130, ¶ 15, 909 A.2d 629; *see also Sharp v. United Airlines, Inc.,* 236 F.3d 368, 373 (7th Cir.2001) (explaining that an "employer's refusal to undo a discriminatory decision is not a fresh act of discrimination" and therefore a "subsequent refusal to reconsider the ... decision does not constitute a separate act of discrimination and cannot bring [an employee's] claims within the ... statute of limitations.") (quotation marks omitted).

[¶ 23] Kezer filed his complaint against CMMC in the Superior Court on October 30, 2007. Therefore, the statute of limitations barred any of his failure to accommodate claims that were based on discrete acts of alleged discrimination that occurred more than two years before that date. *See* 5 M.R.S. § 4613(2)(C) (2011). Kezer testified that his repeated requests for accommodations concerning his hearing condition and his shoulder injury were not granted prior to the starting date of the limitations period. He also represented to CMMC in January and February 2005 that his hearing disability was not a problem and notified CMMC on October 24, 2005, that he could "return to regular duty" and that his "left shoulder ha[d] healed"— events that transpired outside of the applicable limitations period.

[¶ 24] However, Kezer presented evidence at trial that he made some of his requests for accommodations within the limitations period, specifically, between early November 2005 and January 10, 2006, when Kezer left CMMC on medical leave, and that CMMC did not grant those requests. Further, although there is conflicting evidence, the evidence in the record suggests that the circumstances surrounding his disabilities, particularly his shoulder injury, may have changed between his initial requests for accommodations outside of the limitations period and his renewed requests for accommodations within the limitations period. As a result, the court's jury instruction on the statute of limitations issue failed to incorporate the necessary element, clarified by us to-

day, that a significant and material change of circumstances involving the employee's disability or the employer's ability to accommodate the disability, and a subsequent request for a reasonable accommodation based upon such changes followed by a denial of that request, would constitute a new discrete act of alleged discrimination that would establish a starting point for a new statute of limitations period.

[¶ 25] Nevertheless, an error in jury instructions is reversible only if it results in prejudice. *See WahlcoMetroflex,* 2010 ME 26, ¶ 14, 991 A.2d 44; *Niedojadlo v. Cent. Me. Moving & Storage Co.,* 1998 ME 199, ¶ 8, 715 A.2d 934; M.R. Civ. P. 61. The jury found in favor of CMMC on questions two and three of the jury verdict form. Although this finding could have been based on the erroneous statute of limitations instruction, it is equally possible the jury found in favor of CMMC because Kezer did not sustain his burden of proof on his failure to accommodate claims. Moreover, Kezer did not request or propose a jury verdict form that separated the statute of limitations issue from the merits of his claims. Indeed, he objected to CMMC's proposed verdict form that expressly presented the statute of limitations issue to the jury. As a result, because the jury could have reached the same result on the failure to accommodate questions notwithstanding the error in the statute of limitations instruction, Kezer has not established that he was prejudiced by that error. *See McLain v. Training & Dev. Corp.,* 572 A.2d 494, 498 (Me.1990) (explaining that even though the court committed error in a portion of its jury instructions, the objecting party was not prejudiced because the jury could have reached the same result pursuant to the instructions that were not in error).

## B. The MHRA's Good Faith Provision

[¶ 26] Kezer's next argument, that the court erred by declining to instruct the jury that 5 M.R.S. § 4613(2)(B)(8)(b) (2011)[3] imposes a duty on an employer to engage in a good faith interactive process with a disabled employee to identify and make reasonable accommodations for that disability, requires only brief discussion. On review, a party may establish entitlement to a proposed jury instruction "only where the instruction was requested and not given by the court and it: (1) states the law correctly; (2) is generated by the evidence in the case; (3) is not misleading or confusing; and (4) is not otherwise sufficiently covered in the court's instructions." *Frustaci v. City of South Portland,* 2005 ME 101, ¶ 15, 879 A.2d 1001.

[¶ 27] Here, as the court correctly concluded, Kezer's proposed instruction was based on federal regulations pursuant to federal disability discrimination laws, *see* 29 C.F.R. § 1630.2(o )(3) (2011), rather than a requirement of 5 M.R.S. § 4613(2)(B)(8)(b). A plain language reading of the statutory provision reveals that section 4613(2)(B)(8)(b) provides an employer with an affirmative defense to a disability discrimination claim regarding a failure to accommodate pursuant to the MHRA. As such, section 4613(2)(B)(8)(b) does not require an employer to engage in such a consultation. Accordingly, Kezer's

---

**3.** The statute provides, in relevant part:

When a discriminatory practice involves the provision of a reasonable accommodation, damages may not be awarded under this subparagraph when the covered entity demonstrates good faith efforts, in consultation with the person with the disability who has informed the covered entity that accommodation is needed, to identify and make a reasonable accommodation that would provide that individual with an equally effective opportunity and would not cause an undue hardship on the operation of the business.

5 M.R.S. § 4613(2)(B)(8)(b) (2011).

proposed instruction did not state the law pursuant to the MHRA correctly. The court did not err in declining to give his proposed instruction on this issue.

C. Attorney Fees

[¶ 28] Kezer maintains that he brought a single-count complaint of disability discrimination against CMMC and prevailed on that complaint; therefore, the court abused its discretion by awarding attorney fees less than the amount he requested. "We review an award of attorney fees for an abuse of discretion ...." *Gillis v. Gillis*, 2011 ME 45, ¶ 21, 15 A.3d 720. Attorney fees may be awarded to a prevailing party pursuant to the MHRA. *See* 5 M.R.S. § 4614 (2011); *Me. Human Rights Comm'n v. Allen*, 474 A.2d 853, 857 (Me.1984). We have explained that "[t]he trial court is in the best position to observe the unique nature and tenor of the litigation as it relates to a request for attorney fees." *Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 20, 828 A.2d 210. Thus, it is well within the court's discretion to "reduce fees for time spent on unsuccessful claims[,] or reduce fees based on the plaintiff's limited degree of success." *Bangs v. Town of Wells*, 2003 ME 129, ¶ 20, 834 A.2d 955.

[¶ 29] Here, the trial court found that even though Kezer had brought a single-count complaint against CMMC, he raised several disability discrimination claims during the course of the litigation based on two physical conditions: his hearing impairment and his shoulder injury. The court observed that at least half of Kezer's case focused on CMMC's alleged discriminatory actions surrounding his hearing impairment. The court noted, moreover, that it was not reasonable to conclude that CMMC's withdrawal of a light-duty position in January 2006 or its failure to return him to work due to his work restrictions in February 2006 were based on his hearing condition. Rather, those adverse actions

must have been based on his shoulder injury. Further, the court reasoned that the $5000 compensatory damages award indicated that the jury believed Kezer suffered only modest injuries as a result of CMMC's adverse employment action.

[¶ 30] Thus, the court's attorney fees award was the product of a thoughtful, comprehensive, and appropriate determination in light of its observations during the course of the litigation. The court did not abuse its discretion.

## III. CONCLUSION

[¶ 31] In summary, we conclude that even though the court erred in instructing the jury on the statute of limitations issue, the error did not prejudice Kezer. Further, the court did not abuse its discretion by awarding attorney fees less than the amount Kezer requested.

The entry is:

Judgment affirmed.