MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2013 ME 75
Docket:      Yor-12-485
Submitted
 On Briefs:  June 26, 2013
Decided:     August 13, 2013

Panel:       SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

## MICHAEL V. FINUCAN

v.

## LAUREL (FINUCAN) WILLIAMS

ALEXANDER, J.

[¶1]  Michael V. Finucan appeals from a divorce judgment entered in the District Court (York, *Janelle, J.*), dissolving his marriage to Laurel W. Finucan, now Laurel J. Williams.  Michael argues on appeal that the court abused its discretion and otherwise erred when it ordered him to maintain health insurance for Laurel as an element of spousal support.  Michael also argues that the court erred as a matter of law by ordering that he be responsible for Laurel's future nonmarital federal tax debt.  We vacate portions of the divorce judgment and remand for further consideration.

## I.  CASE HISTORY

[¶2]  Michael Finucan and Laurel (Finucan) Williams were married on September 30, 1995, and have two children.  Michael is an airline pilot earning

$108,000 per year. Laurel is a marketing director earning $50,000 per year. Laurel's employer does not provide health insurance, but pays $3500 per year on her behalf to either an individual retirement account or toward health insurance. Laurel does not receive those funds directly; they are paid as she directs. Because Laurel has been covered under Michael's employer's health insurance plan, she has directed that that money be used to fund an IRA.

[¶3] In late 2003, Michael was placed on furlough status by his airline. He then began working as a mortgage broker in South Carolina. Michael purchased a home in South Carolina and planned to move the family there. The family home in Maine was offered for sale but did not sell quickly. As did many individuals at the time, Michael assumed that the South Carolina home would significantly increase in value and be a good investment.

[¶4] Because of the home mortgage interest and property tax deductions resulting from the purchase of the South Carolina home, Michael reduced the amount of his income withheld for payment of federal income taxes so as to avoid overwithholding. With the recession, the anticipated investment gain turned out to be a loss, and the reduced withholding substantially contributed to increased, unpaid tax liabilities for tax years 2009, 2010, and 2011.

[¶5] After they separated, Michael and Laurel filed their federal income tax returns as married filing separately, for tax years 2009, 2010, and 2011. Laurel has

paid all past due taxes she owed for those years, but anticipated that she would have an additional tax liability for the 2012 tax year for withdrawing retirement fund money early in order to pay debts and legal fees. Michael owed $28,000 total for tax years 2009 through 2011.

[¶6] Each party individually filed for bankruptcy after separating; it appears that both were discharged in bankruptcy in 2011.

[¶7] Michael filed a complaint for divorce in June 2011, and Laurel counterclaimed for divorce. The court held a trial over the course of three days in May and June 2012. The parties agree that, once divorced, Laurel would no longer be eligible to receive health care coverage through Michael's participation in his employer's health plan.

[¶8] At trial, the court, over Michael's objection, allowed Laurel to—as the court observed—"speculate" that, after the parties divorced, it would cost $500 to $600 each month for her to continue health insurance coverage through COBRA under Michael's employer's plan. She testified that, in contrast, it would cost at least $1000 monthly for her to obtain health insurance through an independent health insurance provider.

[¶9] The court issued its order granting the parties a divorce on June 15, 2012. Relevant to this appeal, the court ordered Michael to pay Laurel approximately $1100 per month in child support; pay Laurel $1000 per month in

4

general spousal support for seven years and ten months (half the length of the marriage); maintain health insurance for Laurel; and be "solely responsible for any and all debt and monies owed" to the IRS for "any and all previous, current or future tax years, free and clear of any responsibility of Laurel." However, the judgment also indicated that each party was responsible for all debt he or she incurred after the "date of separation."[1]

[¶10] Laurel moved to alter or amend the judgment pursuant to M.R. Civ. P. 59(e), requesting clarification of the provision concerning Michael's maintenance of health insurance for her. Michael likewise moved to alter or amend the judgment pursuant to Rule 59(e), arguing that he should not be required to maintain Laurel's health care insurance because she receives money for health care from her employer and the maintenance of her health care unfairly increases his total spousal support obligation. Michael also argued that the court erred in making him solely responsible for Laurel's tax debts in perpetuity.

[¶11] The court granted in part and denied in part the parties' competing motions and issued an amended divorce judgment in August 2012. As in the original divorce judgment, the amended divorce judgment awarded $1000 per month in general spousal support to Laurel and ordered Michael to pay all federal

---

[1] Michael testified that the parties separated in June 2007, but the court made no finding as to this, and there is no indication that the parties were judicially separated. *See* 19-A M.R.S. § 851 (2012).

tax debts for "previous, current or future tax years." However, addressing health insurance coverage for Laurel, the amended divorce judgment ordered that Michael pay for and maintain health insurance for Laurel "throughout COBRA and thereafter . . . even after she is no longer eligible for COBRA" if she does not have coverage through her employer and that the health care coverage must be "the same or comparable to the coverage" that Laurel had under Michael's employer's health plan.[2]

[¶12] Michael timely appealed from the amended divorce judgment. While this appeal was pending, a single justice of this Court, acting pursuant to M.R. App. P. 14(c), granted Michael's motion to suspend the provisions of M.R. App. P. 3(b) to allow the trial court to consider entering a final judgment dissolving the bonds of matrimony. Michael moved for entry of a final judgment dissolving the bonds of matrimony on June 7, 2013, and a final judgment dissolving the marriage was issued in late June.[3]

---

[2] The court also ordered Laurel to "turn over" to Michael any "discrete sum of money or a stipend" that she "receives" in any year from her employer for health insurance, provided Michael is current on his support obligations. However, Laurel does not directly receive money from her current employer for health care, and she has a choice to direct her employer to pay that money into an IRA instead of health care. It is not clear under the judgment that Laurel is required to "turn over" any funds she constructively receives to Michael in the event that she continues to elect to have the money directed to an IRA.

[3] Pursuant to M.R. Evid. 201(f), we take judicial notice of docket entries in the matter subsequent to the filing of the appeal. *See King v. King*, 2013 ME 56, ¶ 4 n.1, 66 A.3d 593.

## II.  LEGAL ANALYSIS

A.      Health Insurance Coverage

[¶13]  Michael first argues that the court erred in ordering him to provide health care coverage, a form of spousal support, for Laurel comparable to what she had under his employer's plan "throughout COBRA and thereafter."  He asserts that the health care coverage order was error because of the lack of competent evidence of its cost or its availability or of Michael's ability to pay, because the court failed to make the statements required by 19-A M.R.S. § 951-A(1) (2012) and ordered indefinite coverage, and as a matter of policy.

[¶14]  Health insurance coverage provided by one adult for another is a form of spousal support.  *Laqualia v. Laqualia*, 2011 ME 114, ¶¶ 31-32, 30 A.3d 838; *Bryant v. Bryant*, 411 A.2d 391, 394-95 (Me. 1980).  We review an award of spousal support for an abuse of discretion, which includes review of the facts upon which the award is based for clear error.  *Efstathiou v. The Aspinquid, Inc.*, 2008 ME 145, ¶ 52, 956 A.2d 110; *Dubay v. Dubay*, 2002 ME 100, ¶ 3, 799 A.2d 1221.  An award of spousal support is subject to the requirements of 19-A M.R.S. § 951-A (2012),[4] and whether a court properly applied the statute is a question of law reviewed de novo.  *Efstathiou*, 2008 ME 145, ¶¶ 51-52, 956 A.2d 110.

---

[4]  Title 19-A M.R.S. § 951-A (2012) has been amended by P.L. 2013, ch. 327, §§ 1, 2 (to be effective October 9, 2013, *see* Me. Const. art. IV, pt. 3, § 16).

[¶15] "An order granting . . . spousal support must state," among other things, the type of support awarded; the method of payment and the term and limitations imposed; and the factors relied on by the court in arriving at its decision, if the proceeding was contested, as it was in this case. 19-A M.R.S. § 951-A(1); *Urquhart v. Urquhart*, 2004 ME 103, ¶¶ 3-4, 854 A.2d 193. The court is required to consider the factors set out in section 951-A(5), including the payor's ability to pay and the payee's need. 19-A M.R.S. § 951-A(5); *see Brown v. Habrle*, 2008 ME 17, ¶ 17 & n.2, 940 A.2d 1091. Although the court need not "detail [its] rationale," it has "a duty to make sufficient findings to inform the parties of the reasons for its conclusions, and to allow for effective appellate review." *Potter v. Potter*, 2007 ME 95, ¶ 8, 926 A.2d 1193; *see Urquhart*, 2004 ME 103, ¶ 4, 854 A.2d 193.

[¶16] Seeking to address his concerns, Michael filed a Rule 59(e) motion, but did not request additional findings pursuant to M.R. Civ. P. 52(b) after entry of the amended divorce judgment. Because there was no motion for findings after entry of the amended divorce judgment, we will assume that the court made all findings necessary to support its judgment, but only to the extent that those findings are supported by competent record evidence. *See Gillis v. Gillis*, 2011 ME 45, ¶ 16, 15 A.3d 720; *see also Potter*, 2007 ME 95, ¶ 8, 926 A.2d 1193. However, no assumed findings about the costs of the mandated health care

insurance payments or the health care insurance alternative selected are supportable based on the record in this case. The record contains no evidence upon which the court could do anything more than speculate about the costs of the alternatives for health insurance coverage, particularly of COBRA coverage, addressed by the parties. *See Hannum v. Bd. of Envtl. Prot.*, 2003 ME 123, ¶ 15 n.6, 832 A.2d 765 (stating that the fact-finder must rely on evidence, not speculation).

[¶17] The court also effectively ordered Michael to provide health insurance coverage for Laurel indefinitely. Assuming that the health care insurance component of the spousal support order constitutes general support, such an indefinite award would contravene the rebuttable presumption, stated in 19-A M.R.S. § 951-A(2)(A), that general spousal support may not be awarded for a period in excess of half the length of the parties' marriage, absent a finding that a spousal support award based upon the presumption "would be inequitable or unjust." *See* 19-A M.R.S. § 951-A(2)(A); *Payne v. Payne*, 2006 ME 73, ¶ 6 n.1, 899 A.2d 793.

[¶18] Because the spousal support award has two components—monthly payments and health insurance coverage—that coordinate to provide an integrated source of spousal support for Laurel, we must vacate the entire spousal support award portion of the judgment and remand for the court's redetermination of

spousal support including the health care cost component in accordance with section 951-A(1), (5) and (2)(A).[5]

B.    Allocation of Tax Debts

[¶19]  Michael argues that the court erred when it effectively ordered him to pay Laurel's future, nonmarital tax debt.  We review the classification of debt as marital or nonmarital for clear error, the court's allocation of responsibility for marital debt for an abuse of discretion, and its application of statutory law de novo. *See Efstathiou*, 2008 ME 145, ¶ 41, 956 A.2d 110; *Hedges v. Pitcher*, 2008 ME 55, ¶ 20, 942 A.2d 1217; *Hess v. Hess*, 2007 ME 82, ¶ 15, 927 A.2d 391.  "We construe divorce judgments consistent with the intent of the divorce court," as

---

[5]  Certain group health plans are obligated to make COBRA continuation coverage available to "qualified beneficiaries" when a "qualifying event" has occurred.  26 U.S.C.A. § 4980B(f) (West, Westlaw through P.L. 113-22 (excluding P.L. 113-14)); Treas. Reg. § 54.4980B-1, Q&A (1) (as amended in 2001).  A person who was covered under a group health plan as the spouse of a covered employee on the day before a qualifying event is a "qualified beneficiary."  Treas. Reg. § 54.4980B-3, Q&A (1) (as amended in 2001).  A divorce or legal separation of a covered employee from his or her spouse is a "qualifying event" if, under the terms of the plan, the divorce or legal separation causes the non-employee spouse to lose coverage under the plan.  Treas. Reg. § 54.4980B-4, Q&A (1) (as amended in 2001).  If coverage is eliminated in anticipation of the qualifying event, the elimination is disregarded in determining whether the qualifying event causes a loss of coverage.  *Id.*; Rev. Rul. 2002-88, 2002-2 C.B. 995.  We cannot determine whether the subsequent order making dissolution of the marriage final, or any subsequent marriage by Michael, may affect the capacity of the court on remand to order COBRA continuation coverage for Laurel.  The court may have to resolve this issue on remand if the option of an order to provide COBRA continuation coverage is considered.

Subject to other rules, a health insurance plan generally must make COBRA continuation coverage available for thirty-six months after the date of the divorce or legal separation.  Treas. Reg. § 54.4980B-7, Q&A (1) & (4) (as amended in 2001); Rev. Rul. 2002-88, 2002-2 C.B. 995.  Generally, and subject to the terms of the plan, notice of the qualifying event must be provided to the plan administrator within sixty days after the later of the date of the divorce or legal separation or the date the qualified beneficiary would lose coverage on account of the divorce or legal separation and timely election of coverage made.  Treas. Reg. § 54.4980B-6, Q&A (1)-(3) (as amended in 2001).

revealed in the judgment's language. *Lewin v. Skehan*, 2012 ME 31, ¶ 24, 39 A.3d 58.

[¶20] In a divorce, the parties' responsibility for marital debt is subject to allocation or division in accordance with 19-A M.R.S. § 953 (2012) in the same manner as marital property. *Hess*, 2007 ME 82, ¶ 15, 927 A.2d 391 (holding that "property, including marital debt," is divided pursuant to section 953(1)).

[¶21] The amended divorce judgment orders Michael to be "solely responsible for any and all debt and monies owed to the Internal Revenue Service for any and all previous, current or future tax years, free and clear of any responsibility of Laurel." The divorce judgment can be read as making Michael solely and indefinitely responsible for paying Laurel's post-divorce federal tax debts. Such an order would exceed the court's statutory authority to allocate assignment of debt. *See Laqualia*, 2011 ME 114, ¶¶ 13, 15, 19, 30 A.3d 838.[6] However, it is more likely that the court's intent was only to ensure that Michael remained fully responsible for the tax debts for the 2009-2011 tax years that have not yet been finally paid. Such an order regarding the as-yet-unpaid tax liability

---

[6] *But see King*, 2013 ME 56, ¶ 11 & n.2, 66 A.3d 593 (approving of a circumstance in which a court may award one party's nonmarital property to the other spouse as reimbursement spousal support).

for tax years during the term of the parties' marriage would be well within the court's authority.[7]

[¶22]  The court's amended order does state, "All debts of the parties since the date of separation . . . shall be the responsibility of the party incurring said debt," suggesting that indeed the court's reference to future obligations means only those obligations arising for underpayment of taxes in tax years 2009-2011.  On remand, the court should clarify the tax years to which it intended its order regarding tax payments to apply.

The entry is:

> The portion of the judgment awarding spousal support, including health insurance coverage, and the portion of the judgment ordering payment of future tax debts is vacated and remanded for further proceedings or clarification consistent with this opinion.  The remainder of the divorce judgment is affirmed.

---

**On the briefs:**

Joe Lewis, Esq., Port City Legal, Portland, for appellant
Michael V. Finucan

Laurel W. Finucan pro se appellee

York District Court docket number FM-2011-106
FOR CLERKS REFERENCE ONLY

---

[7]  Any suggestion by Michael that he may not be responsible for debt incurred after the parties separated, but prior to the divorce, is unavailing.  *See Doucette v. Washburn*, 2001 ME 38, ¶ 16 & n.10, 766 A.2d 578.