MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2020 ME 31
Docket:        Was-19-372
Submitted
  On Briefs:   February 26, 2020
Decided:       March 10, 2020

Panel:         MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

IN RE CHILDREN OF RICHARD E.


PER CURIAM

[¶1] This consolidated appeal addresses proceedings to determine parental rights and responsibilities and child protection proceedings involving the father, his two children, and the biological mother of each child. The father appeals from multiple judgments entered on the same day by the District Court (Machias, *D. Mitchell, J.*), in which the court (1) found that each child is in circumstances of jeopardy, (2) granted a motion to modify an order governing parental rights and responsibilities between the father and the mother of the older child, (3) granted a motion to modify an amended divorce judgment between the father and the mother of the younger child, and (4) denied the father's motions for contempt and to enforce filed against the mother of the younger child.

[¶2] We affirm the jeopardy orders, but conclude that the court erred, in part, in granting the motions to modify.

## I.  BACKGROUND

A.    Parental Rights Proceedings

    1.    The Older Child

[¶3]   On February 12, 2007, the court (*Romei, J.*) entered an order establishing parental rights and responsibilities between the father and the mother of the older child, granting primary residence and sole parental rights and responsibilities of the child to the mother and allowing the father supervised visits with the child on certain days.  The father visited with the child pursuant to this order until August 2018, when the mother stopped visitation between the father and the older child.[1]

[¶4]   On September 12, 2018, the father filed a motion for contempt against the mother, alleging that the mother had violated the 2007 parental rights order by not allowing supervised visitation between the father and the child.  Later, on December 12, 2018, the father also filed a motion to modify the terms of the 2007 parental rights order, requesting that further visitation be allowed.  After a hearing was held on the motion for contempt on

---

[1]  The court found that, in August 2018, there were allegations made by a friend of the parents that the father had assaulted her.  The court also found that information about the allegation was referred to the Department, a local police department, and the Maine State Police, although no charges were ever brought, and that neither child was aware of the allegation until sometime after.  Each mother stopped visitation between the father and the children after this allegation in August 2018.

January 7, 2019, the court (*Rushlau, J.*) granted the father's motion and found that the mother had failed to comply with the 2007 parental rights order. The court awarded the father additional visitation time with his child each weekend, in addition to the visitation schedule in the 2007 parental rights and responsibilities order. The court did not reach the motion to modify at that time.

2. The Younger Child

[¶5] On January 13, 2011, the court (*Langner, M.*) entered a divorce judgment between the father and the mother of the younger child, granting shared rights and responsibilities and placing primary residence of the child with the mother. On March 13, 2012, the schedule of contact between the father and the child was further modified by agreement.

[¶6] On July 18, 2013, the Department filed a petition for a child protection order, alleging that the younger child was in circumstances of jeopardy, in part, because of the father's "controlling behaviors" and the father's constantly "speaking negatively" about the mother. On October 15, 2013, the court (*D. Mitchell, J.*) entered a jeopardy order,[2] which placed

---

[2] We later affirmed this order after an appeal by the father. *See In re L.E.*, Mem-14-92 (July 3, 2014).

4

custody of the child with the mother, and, on May 20, 2014, entered a judicial review order.

[¶7] On May 11, 2016, the court entered an order amending the 2011 divorce judgment between the father and the mother of the younger child, finding that, although the parents continued to have difficulty co-parenting, the parents "shall continue to share parental rights and responsibilities." The court also amended the schedule for contact between the father and child. As a result, the court found that the parameters of the amended divorce judgment would alleviate jeopardy and dismissed the 2013 child protection matter.

[¶8] Nearly two years later, on May 16, 2018, the father filed a motion to enforce the contact schedule in the 2016 amended divorce judgment. The father alleged that the mother had not allowed contact between him and the younger child and requested that the court enforce the contact schedule as agreed to in 2016. On that same day, the mother filed a motion to modify the 2016 amended divorce judgment, alleging, in part, that the existing contact schedule had caused "anxiety issues" for the child. The mother also requested that the judgment be modified to allow her sole decision-making authority

over the child's mental health counseling, and for the child's counselor to recommend a schedule for contact between the father and the child.

[¶9] On May 22, 2018, the court entered an agreed-to interim order in which the mother and the father agreed to certain conditions regarding the child's counseling and the schedule for contact between the father and child. The court did not enter judgment on the pending May 16, 2018, motions. Later, on January 22, 2019, the father filed a motion for contempt against the mother, alleging that the mother had failed to comply with the contact schedule as ordered in both the 2016 divorce judgment and the May 22, 2018, interim order.[3]

### 3. Judgments in the Parental Rights Proceedings

[¶10] On March 28, 2019, the court continued the hearings on the May 16, 2018, motions and the father's January 22, 2019, motion regarding the younger child, and set the matters to be heard at the same time as recently filed petitions for child protective orders regarding both children.[4] The court later, over the father's objection, consolidated the hearings on the father's

---

[3] The mother of the younger child had stopped visitation between the father and the child, in part, because of the alleged assault in August 2018. *See supra* n.1.

[4] Petitions for child protection orders for both the older child and the younger child were filed on March 27, 2019, one day prior to the court's order consolidating the hearings on the pending motions with the hearing on the child protection petition. *See infra* I.B.

pending December 12, 2018, motion to modify with the child protection petition regarding the older child. Between May 9, 2019, and July 9, 2019, the court held a series of five hearings on the pending motions and the child protection petitions, throughout which, among others, the father, each mother, and each child testified.

[¶11] On August 19, 2019, the court entered judgment on the pending motions in the parental rights proceedings. The court granted the father's motion to modify the 2007 parental rights order regarding the older child, but it did not grant the relief the father requested. Rather, the court continued sole parental rights and responsibilities with the mother and ordered that the father's visitation with the older child be resumed when "therapeutically recommended."

[¶12] Regarding the younger child, the court granted the mother's motion to modify, ordering, in part, that the father have contact with the younger child on "one day per weekend for a period of 2 hours" under the supervision of an agency or "trained neutral professional" and that this arrangement continue for six weeks, after which "upon recommendation of the child's therapist, [the father's] contact may be extended." Additionally, the court denied the father's motion for contempt and motion to enforce, finding

that the father had failed to carry his burden on either motion. The court determined that, in light of the history of parental contact and the anxiety it caused the child, it was not unreasonable for the mother of the younger child to cease contact between the father and the child, and that the authority to make this decision was granted to the mother in the 2016 amended divorce judgment.

[¶13] The father timely appealed from each order on September 3, 2019. *See* 14 M.R.S. § 1901 (2018); 19-A M.R.S. § 104 (2018); M.R. App. P. 2B(c)(1).

B.     2019 Child Protection Proceeding

[¶14] On April 12, 2019, the Department filed separate amended petitions for child protection orders regarding the younger child and the older child.[5] The petitions alleged that the children were subject to "emotional maltreatment" by the father as a result of his conduct and comments regarding the children's habits, appearances, and relationships with their mothers, and that these actions resulted in diagnosed mental harm to each child.

---

[5] The Department originally filed the petitions on March 27, 2019, but amended both petitions on April 12.

[¶15]   As noted above, the court held a consolidated hearing on the petitions, as well as the pending motions, over five days between May 9, 2019, and July 9, 2019.  On August 19, 2019, the court entered a jeopardy order as to each child, finding by a preponderance of the evidence that each child was in circumstances of jeopardy.  In support of its determination that the children were in jeopardy, the court made the following findings of fact, which are supported by competent evidence in the record.  The court found that the mother of each child had stopped her child from having contact with the father in August 2018 as a result of a report of alleged assaults by the father against a friend of the mothers.[6]

[¶16]  With regard to the older child, the court found as follows:

> Based on not seeing his child . . . [the father] filed a Motion for Contempt in the Fall of 2018 and then a Motion to Modify [the 2007 parental rights and responsibilities order] on December 13, 2018.  [After the court held the mother in contempt], [the father's] contact . . . resumed and was supervised by [a friend of the father] for a few hours on Saturdays and Sundays.  The court finds that [the friend of the father] is not an appropriate supervisor . . . [because the friend] does not appropriately intervene when [the father's] conduct during visits needs to be addressed, redirected and corrected. . . .

---

[6] The court stated that "whether there is jeopardy to the child, the court gives little weight to the fact allegations of this nature were made. The court never heard directly from the accuser and was not afforded any opportunity to assess the credibility of her or her claims."  The court "evaluate[d] whether there [was] jeopardy based on [the father's] conduct and its effect on the child and not on unfounded allegations made by a person from whom the court has not heard."

In February or March 2019, shortly after [the child's] contact with [the father] resumed, [the current case was] opened by the Department, this time based on a referral from [the child's] counselor . . . whom [the child] had been seeing since October 2018, for anxiety around visiting [the father]. That referral was made based on the child's disclosure that [the father] had been making the child play on the trampoline without shoes and in the cold. In addition, [the counselor] had brought to the Department's attention that since visits had resumed, [the child's] anxiety had increased, [the child's] speech had become more pressured, [the child] appeared to have a nervous tick and was threatening to run away. [The child] was also reporting at this time that [the] father focused on [the child's] weight, what [the child] ate, how [the child's] hair was worn]. By early March, [the counselor] reported that [the child] was in crisis surrounding visits with [the] father.

. . . .

. . . [The father] has used kittens as bargaining tools and rewards for eating the way he wants the child to eat. He shames the child particularly around the types of food [the child] eats[,] . . . demeans [the child's] family in an effort to teach [the child] lessons around healthy living, . . . [and] criticizes the child about [the child's] appearance, [the child's] lack of athletic ability (in comparison to [the younger child]), [the child's] hair and . . . weight. He has tried to have others manipulate on his behalf, like [a friend of the father], with whom he arranged a one-hour meeting with [the child] in an effort to coax the child into testifying or speaking favorably about him. Such conduct . . . makes the child feel worthless.

. . . [The child] does well in school and is articulate. [The child] lives with [the child's] mother and [the mother's] husband, whom [the child] refers to as "dad." . . . [The child] struggles with [the] father's manipulative behaviors which can be intimidating, demeaning and confusing and which have already plagued [the child] with a psychological disorder, adjustment disorder and anxiety. [The child] has been in therapy with [the counselor]

since October 2018. . . . [The child] is at risk of an eating disorder and further serious harm absent a protective order. Since the visits [the child] had [with the father] since January 2019, have had an adverse impact on [the child], and based on [the] counselor's recommendations, those visits shall now cease. Family therapy is warranted and is in fact recommended by [the father's] own therapist.

[¶17]  With regard to the younger child, the court found as follows:

The Department was previously involved with the family in [2013], in which a . . . Jeopardy Order issued as to the father based on "*parental conflict and, particularly, as to the father, based on the threat of emotional abuse.*" . . .  Ultimately [the child protection proceeding] concluded with the entry of an Order Amending Divorce Judgment on May 11, 2016. . . .

Since [then], the parents have been governed by that Order Amending Divorce Judgment. . . .

Although the Amended Divorce Judgment seemed to keep the peace for some time, in late 2017, the child's [m]other began to notice the child exhibit some concerning behaviors.  She noticed that the child had a "twitch" and complained of sickness before visits with the [f]ather.  This behavior was also observed by the child's school principal who around the same time noticed that the child seemed more anxious when [the father] was around, pulling away from his hugs and expressions of affection when retrieving [the child] at school or attending school functions. . . .

. . . .

. . . [T]he circumstances of jeopardy in this case do not differ terribly from those present in the prior DHHS matter. . . . [The father] has repeatedly tried to control what foods [the child] eats, and realizing he cannot fully control what [the child] eats while at [the] mother's, he often tells [the child] not to listen to [the] mother.  In an attempt to control [the child's] eating habits while

not in his care, he has told [the child] "a birdie tells him what [the child] eats" and that certain food will make [the child] "fat like [the] mother." He has shamed [the child] into not eating certain foods, which he then eats himself. He has made comments about [the child] getting fat, made comments about the length of [the child's] hair and how [the child's] mother parents. There have been occasions when he just appeared at a Walmart, a Walgreens and a McDonalds since August 2018, creating situations that have intimidated [the child] and caused [the child] to feel shame about eating. He has been "overly enthusiastic" at school events, brandishing a sign or poster at one event, the only parent to do so. He frequently refers to [the child] in public . . . [by] names that embarrass a child that age, and he does all without any regard whatsoever for the effect his conduct has on [the child].

. . . [The child] is sophisticated and an active, high performer, who does very well in school. [The child] is articulate and insightful [and] . . . is connected and comfortable with [the] mother and in that family unit. [The child] also loves [the] father but struggles with his behaviors which can be intimidating, manipulative and confusing and which have already plagued [the child] with an anxiety disorder for which [the child] has been in therapy since at least July 2018. [The child's] therapist . . . made clear that [the child] is already at risk of significant harm and that unless [the father's] behaviors change, [the child] will suffer a fear of interaction and lose self-efficacy. [The child] is already at risk of an eating disorder because [the child] wants to please [the] father. [The child's] anxiety is real and at risk of worsening absent a protective order.

[¶18] Based on these findings and its determination that the children were in jeopardy, the court ordered that the children be placed in the custody of their respective mothers. Regarding the older child, the court, as it did in the order modifying the 2007 parental rights order, prohibited contact

between the father and the child "unless therapeutically recommended," and ordered that both the father and the child remain in counseling with their respective therapists. The court also required the Department to arrange "family therapy" for the father, mother, and child. Regarding the younger child, the court determined that the father's contact was to take place, for a period of six weeks, under professional supervision for one weekend day for a period of two hours, and—as the court required in its order modifying the 2016 amended divorce judgment—that this contact may be extended "upon recommendation of the child's therapist." The court also required that the father and the child remain in counseling, and that the Department arrange family counseling for all parties.

[¶19] The father timely appealed. *See* 22 M.R.S. § 4006 (2018); M.R. App. P. 2B(c)(1).

## II. DISCUSSION

A.    Jeopardy Orders

1.    Sufficiency of the Evidence

[¶20] The father contends that the court erred in finding that each child is in circumstances of jeopardy, arguing that there was insufficient evidence to support the finding and that the court "likened symptoms of parental discord

. . . to conditions of jeopardy." The father contends that the allegations against him "cannot meet the threshold required of 'serious harm or threat of serious harm'" pursuant to 22 M.R.S. §§ 4002(6)(A) and 4035 (2018).

[¶21]  We review the court's factual findings for clear error and will affirm its jeopardy determination "unless there is no competent record evidence that can rationally be understood to establish as more likely than not that the child was in circumstances of jeopardy to his [or her] health and welfare." *In re Nicholas S.*, 2016 ME 82, ¶ 9, 140 A.3d 1226 (quotation marks omitted);  *see* 22 M.R.S. § 4035(2) (requiring that a determination of jeopardy be supported by a preponderance of the evidence).

[¶22]  "Jeopardy" is defined as "serious abuse or neglect, as evidenced by . . . [s]erious harm or threat of serious harm." *Id.* § 4002(6). "Serious harm" is further defined, in part, as "[s]erious mental or emotional injury or impairment which now or in the future is likely to be evidenced by serious mental, behavioral or personality disorder, including severe anxiety, depression or withdrawal, untoward aggressive behavior, seriously delayed development or similar serious dysfunctional behavior."  22 M.R.S. § 4002(10)(B) (2018).

[¶23] For a court to find jeopardy, it "need[] only . . . find, as a matter of fact, that it was more likely than not that [the child] would incur serious harm, or be subject to a threat of serious harm, if she was returned to the custody" of the parent. *In re Nicholas S.*, 2016 ME 82, ¶ 11, 140 A.3d 1226. We have previously held that "the existence of the emotional harm or threat of emotional harm [is required to] be of sufficient severity that, now or in the future, it is likely to be evidenced by serious mental, behavioral or personality disorder. That disorder may manifest itself through severe anxiety, depression or withdrawal, or other dysfunctional behavior, but there must be evidence of the likelihood of the disorder or threat of that disorder." *In re Jazmine L.*, 2004 ME 125, ¶ 15, 861 A.2d 1277 (emphasis omitted) (citations omitted) (quotation marks omitted); *see In re Irene W.*, 561 A.2d 1009, 1012-13 (Me. 1989) (finding jeopardy as a result of "emotional harm" and anxiety). We have, in another context, determined that "emotional harm can create jeopardy in the same way as physical harm." *In re J.H.*, 2015 ME 10, ¶ 7, 108 A.3d 1271.

[¶24] Here, the court did not clearly err in determining that each child currently experiences anxiety relating to visitations with the father, and that the emotional well-being of each child will likely worsen in the future absent

any change in the visitation schedule or the father's conduct. Although the record gives support to the father's contention that "parental conflict and a vast contrast in parenting styles" has contributed to the children's anxiety, there is, nonetheless, competent evidence in the record, including testimony from the children and their social workers, demonstrating that the father's conduct toward both children regarding the foods they eat, their appearances, and the comments made about their mothers has contributed to and increased each child's anxiety, and that this anxiety would continue into the future.

[¶25] Therefore, because there was "competent record evidence that can rationally be understood to establish as more likely than not that the [children were] in circumstances of jeopardy to [their] health and welfare," *In re Nicholas S.*, 2016 ME 82, ¶ 9, 140 A.3d 1226 (quotation marks omitted), the court did not clearly err in determining that each child is in circumstances of jeopardy. *See* 22 M.R.S. § 4035(2)

2.      Failure to Dismiss Department's Petitions

[¶26] The father next contends that the court abused its discretion when it entered jeopardy orders as to each child simultaneously with

corresponding parental rights orders, arguing that the court was required to dismiss the Department's petitions for child protection orders.

[¶27]  During a child protection proceeding, and "upon request of a parent," a court "may enter an order awarding parental rights and responsibilities pursuant to [19-A M.R.S. § 1653 (2018)] if the court determines that the order will protect the child from jeopardy and is in the child's best interest as defined in [19-A M.R.S. § 1653(3)]."  22 M.R.S. § 4036(1-A) (2018).  The court must then require that a family matters case be opened and "require the case to be appropriately docketed without a separate initial filing by the parties."  *Id.* § 4036(1-A)(A).  In such instances, "when a court determines that entering a parental rights order pursuant to [section 4036(1-A)] will alleviate jeopardy, the court must do so."  *In re Nicholas S.*, 2016 ME 82, ¶ 6, 140 A.3d 1226.

[¶28]  Here, there were existing family matters cases already pending for each child.  The effective orders were the 2007 parental rights and responsibilities order regarding the older child, and the 2016 amended divorce judgment regarding the younger child.  As such, the parents could not "request" a parental rights and responsibilities order to take the place of the pending orders, nor could a new family matters case be "open[ed]," and the

court did not err in not dismissing the Department's petition. 22 M.R.S. § 4036(1-A); *see In re Paige L.*, 2017 ME 97, ¶¶ 35-39, 162 A.3d 217 (affirming a jeopardy order and an amended parental rights and responsibilities order).

B.  Delegation of Court's Authority in the Parental Rights Orders

[¶29]  The father also argues that the court erred in its judgments modifying the 2016 order amending divorce judgment regarding the younger child, and the 2007 parental rights judgment regarding the older child, when it deferred to the recommendations of the children's therapists when determining contact between the father and each of the children.  The father contends that instead of making its determinations based on the standards set forth in 19-A M.R.S. § 1653, the court, in effect, delegated to the children's therapists its authority to determine the future contact between the father and the children.

[¶30]  "We review a ruling on a motion to modify a parental rights and responsibilities order for findings unsupported by the record, an abuse of discretion, or an error of law."  *Kelley v. McKee*, 2019 ME 155, ¶ 7, 218 A.3d 753.  "We review a trial court's decision on a motion to modify a divorce judgment for an abuse of discretion or errors of law."  *Papadopoulos v. Phillips*, 2018 ME 74, ¶ 8, 186 A.3d 852 (quotation marks omitted).  In each instance,

18

when modifying a judgment, the trial court must analyze the child's best interests as required by 19-A M.R.S. § 1653(3). *Kelley*, 2019 ME 155, ¶ 7, 218 A.3d 753; *Papadopoulos*, 2018 ME 74, ¶ 8, 186 A.3d 852. Generally, "it is error for a court to delegate responsibility to a third party to decide when a parent can have contact with his children." *Pearson v. Wendell*, 2015 ME 136, ¶ 33, 125 A.3d 1149. Thus, "the requirement of third-party approval for contact . . . improperly 'transfer[s] the court's responsibility for determining the best interest of the child to the therapist.'" *Id.* (quoting *Knight v. Knight*, 680 A.2d 1035, 1038 (Me. 1996)).

[¶31] Here, the court required that contact between the father and the older child shall resume "as therapeutically recommended." Similarly, the court required that contact between the father and the younger child take place in the presence of a professional supervisor for a period of six weeks, but after that time, contact could be extended "upon recommendation of the child's therapist." The court erred by requiring that future contact, and any extension of such contact, between the father and each child be dependent upon the recommendation of the child's therapist, because this "transfer[red] the court's responsibility for determining the best interest[s] of the child[ren]." *Pearson*, 2015 ME 136, ¶ 33, 125 A.3d 1149 (quotation marks

omitted). As we made clear in *Knight*, although the court can consider a therapist's opinion in its determination of a parent's right to have contact with a child, "the court cannot make the visitation outcome dependent upon that opinion." *Knight*, 680 A.2d at 1038.

[¶32] Therefore, we vacate the parental rights orders in part and remand for the court to clarify that decisions regarding contact between the father and each child, as set forth in paragraph 1 of the court's judgment modifying the 2016 order amending divorce judgment regarding the younger child, and paragraph 2 of the court's judgment modifying the 2007 parental rights judgment regarding the older child, must be made by the court after considering the best interests of each child, and that these decisions may be guided by, but not dependent on, the recommendations of each child's therapist.[7]

C. Father's Motion for Contempt

[¶33] The father contends that the court erred and abused its discretion when it denied his motion for contempt against the mother of the younger child, arguing that the mother unilaterally ceased contact between

---

[7] Although the father has not raised the "delegation of authority" issue as to the court's jeopardy orders, we note that both jeopardy orders identically condition future contact between the father and each child upon the recommendations of the children's therapists, mirroring the language contained in the court's orders modifying the 2016 order amending divorce judgment and 2007 parental rights judgment.

the father and the child even when the mother was able to comply with the existing order that governed visitation.

[¶34]  "We review the factual findings that form the basis for the trial court's decision regarding motions for contempt for clear error, and the ultimate denial of a motion for civil contempt for abuse of discretion." *MacMahon v. Tinkham*, 2015 ME 9, ¶ 10, 109 A.3d 1141 (alterations omitted) (citation omitted) (quotation marks omitted).  Where a party has not filed a motion for further findings of fact, *see* M.R. Civ. P. 52, "we assume that the court made any necessary subsidiary findings that are supported by competent evidence in the record."  *Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 10, 982 A.2d 339.

[¶35]  The father, as the moving party, had the burden of proof at the hearings to demonstrate, by clear and convincing evidence, that the mother of the younger child was "presently able to comply with the court's . . . order and that she ha[d] failed or refused to do so."  *MacMahon*, 2015 ME 9, ¶ 11, 109 A.3d 1141; *see* M.R. Civ. P. 66(d)(2)(D).  After the moving party establishes a failure to comply, "the alleged contemnor has the burden of production, of going forward with evidence of his inability to comply. The burden of persuasion, however, remains with the moving party."  *Ames v. Ames*, 2003 ME

60, ¶ 22, 822 A.2d 1201 (alterations omitted) (quotation marks omitted). Thus, when challenging the denial of a motion for contempt on appeal, the father must demonstrate that "a contrary finding is compelled by the evidence." *MacMahon*, 2015 ME 9, ¶ 11, 109 A.3d 1141 (quotation marks omitted).

[¶36] Here, the court found that the father "failed to carry . . . his burden[]," because, in light of the history of the father's parenting style and the anxiety issues of the child that had "resurfaced" in 2017 and 2018, it was not unreasonable for the mother to "cease contact." The court also found that the mother was "trying to protect the child from the risk posed by [the father's] conduct towards the child." Because, as noted above, the court's findings as to jeopardy were supported by competent evidence in the record, the father has not met his burden "that a contrary finding is compelled by the evidence." *Id.* (quotation marks omitted); *see Ames*, 2003 ME 60, ¶¶ 23-24, 822 A.2d 1201. As such, the court did not clearly err or abuse its discretion in denying the father's motion for contempt.

The entry is:

> Jeopardy orders affirmed. Parental rights orders vacated, in part. Denial of motion for contempt affirmed. Parental rights matters

remanded for further proceedings consistent with this opinion.

---

Amy McNally, Esq., Woodman Edmands Danylik Austin Smith & Jacques, P.A., Biddeford, for appellant father

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Molly Owens, Esq., Owens & Hodgkins Law, PLLC, Machias, for appellee mother of the older child

Dennis L. Mahar, Esq., Mahar & Clark, Calais, for appellee mother of the younger child

Machias District Court docket numbers FM-2006-66, FM-2010-70, PC-2019-2, and PC-2019-3
FOR CLERK REFERENCE ONLY